Daniel, J.
Heither of the counts in the declaration is good as a common law count in slander. To say of a party that he swore to a lie is not of itself actionable at common law. Such a charge does not necessarily imply perjury. In case of a charge of forswearing, unless, from the accompanying words, it be clear that a judicial forswearing was meant, the plaintiff must show upon the record, that-the defendant alluded to some particular forswearing wffiich amounted to perjury. 1 Starkie on Slander, 355; Hopkins v. Beedle, 1 Caines R. 347.
The first count in the declaration, whilst it sets out in its prefatory' or introductory statements, that the defendant in error, before the speaking of the words by the plaintiff in error, had been examined on oath, and had given his evidence as a witness in an action depending before two justices of the peace, has no allegation or averment that the words complained of were spoken in relation to said evidence. In the coUoquium, no allusion even is made either to the action aforesaid or to the *83 evidence, of the plaintiff in error, given therein. The defect was fatal. Hawkes v. Hawkey, 8 East’s R. 427; 3 Strobh. R. 465 ; Sanderson v. Hubbard, 14 Verm. R. 462.
The insufficiency of the second count is still more obvious. It is without any of the introductory averments of the first count. The avermbnt in the innuendo, that the plaintiff in error, in speaking the words meant to charge the defendant in error with perjury, cannot serve to supply the want of previous statements showing that the words were spoken in reference to sworn evidence given by the defendant as a witness on examination in a judicial proceeding. An innuendo is explanatory of subject matter sufficiently expressed before; and it is explanatory of such matter only; it cannot extend the sense of the words beyond their own meaning, unless something is put on the record for it to explain. Vanvechten v. Hopkins, 5 John. R. 211; Sheely v. Briggs, 2 Har. & John. 363; Porter v. Hughey, 2 Bibb’s R. 282: Mosely v. Moss, 6 Gratt. 534.
It seems to me quite clear, also, that, unless certain provisions in the Code, which will be presently noticed, are to be construed as having altered the rules of pleading in the particular under consideration, neither of the counts can be sustained as a sufficient count for insulting words. In the case of Mosely v. Moss, (just cited) this court held that the legislature did not design, by the a.ct then in force, to interfere with the common law actions for defamation; that a party aggrieved might still proceed at the common law as if the statute had never been made, or might avail himself of the statutory remedy when applicable to his case. That if he proceeded under the statute he should declare under the statute; and that if he did not declare under the statute his declaration, to be good, should properly charge words amounting to slander at common law; that *84 fie could not blend charges for the statutory and the eom- , . b J , , mon law grievance m the same count; and that when, therefore, the plaintiff, on the face of his declaration, treate(i the grievance as a common law defamation, he should be held to his own construction of the words, and required to make out such a case by his pleading and evidence; and, failing to do so, could not recover for an insult under the statute.
It is true, there is some apparent conflict between the decision of the court in Mosely v. Moss and its previous decision in the case of Brooks v. Calloway, 12 Leigh 466; inasmuch as the court, in affirming in the last mentioned case the judgment of the Circuit court, rejecting the plea of justification to the first count of the declaration—which, whilst it averred the words complained of to be slanderous, was plainly defective as a common law count for defamation—proceeded on the assumption that said count might be relied on, under the statute, though it neither averred that the words were insulting, nor made any reference to the statute, to indicate that the action was founded on it. It' is to be observed, however, that, in Brooks v. Calloway there was no demurrer to the declaration; and that the main question discussed and considered, was, whether treating the first count as •a count for insulting words under the statute, a special plea of justification to part of the words charged in said count ought to have been rejected by the Circuit court; whilst in Mosely v. Moss there was a demurrer to the declaration, in passing upon which, the question how far the mode of declaring, in actions for defamation, had been regulated or affected by our legislation, was distinctly presented to, and fully considered by, the court; and that, of the four judges composing the court in the last mentioned case—all of whom concurred in'sustaining the demurrer—three were also members of the *85 court in Brooks v. Calloway, and liad united in rendering the decision made in that case.
The ease of Mosely v. Moss is, therefore, I think, entitled to he treated as furnishing the rule on the subject, as matters stood under our former statute. Such a rule is, as I conceive, in strict accordance with the general principles of pleadings, it being well settled, as a general rule, that in a statutory action, the offence or act charged to have been committed or omitted by the defendant, must appear to have been within the provision of the statute, and all the circumstances necessary to support the action must be alleged, or in effect appear on the face of the declaration. 2 Saunders on PL & Ev. 110. The propriety of the rule, too, it is worthy to be noticed, has been strongly vindicated by the decisions of one of our sister States. The State of Mississidpi, at an early period, adopted our act of 1810, and in cases arising under the statute there, the Supreme court, in repeated decisions, have uniformly held that, in counting under the statute, the declaration must contain an averment, that the words, according to the common acceptation, were insulting and calculated to lead to violence and breach of the peace, or some other averment of like import. Scott v. Peebles, 2 Smeedes & Marsh. 516; Davis v. Farrington, Walker’s R. 304; Warren & wife v. Norman & wife, Ib. 387.
It is argued, however, that the change in the law, as it was enacted in 1810 and in 1830-31, made by the second section of the one hundred and forty-eighth chapter, and the introduction into our system of the new provisions to be found in the forty-fourth section of the one hundred and seventy-sixth chapter, of the Code, were designed by the legislature to effect, and should be treated by the courts as affecting, an entire abrogation of the rule in question, as declared in Mosely v. Moss ; and that now, whether the plaintiff proceeds *86 as for defamation at common law, or charges words that 0 could be actionable only under the statute, no demurrer to the declaration is to preclude the- jury from passing on ease. It is said that the main reason on which the rule was rested, was the alleged necessity of informing the defendant distinctly whether he was proceeded against for common law defamation, or merely for insulting words; a necessity (as was supposed) arising out of the consideration that, as the law formerly was, the character of the defence allowable was dependent on the nature of the accusation; a plea*of the truth of the words being admissible in cases of common law defamation, and not in cases of words actionable only by the statute, that the Code now allows the defendant in each class of cases to plead the truth of the words, and that, consequently, there no longer exists (if there ever existed) any necessity for or propriety in the rule, requiring the plaintiff to show by his declaration whether imputes to the defendant a slander or merely an insult.
It must be conceded, I think, that the effect of the legislation under consideration, is to extend the plea of justification to words made actionable by the statute. The language of the Mtli section of the lY6th chapter of the Code is general: “ In any action for defamation the defendant may justify by alleging and proving that the words spoken or written were true.” It is true that the word defamation has a technical sense as a generic term, comprehending the two species of words slanderous at common law, spoken and written slander, and nothing more. "When it is considered, however, .that though in some of the earlier cases Lord Hardwieke and other English judges, denied that in suits for libel the defendant could plead the truth of the words in justification ; yet that it has been long and well settled, as well in England as in this country, that the plea of the *87 truth o£ thp words is a good justification in actions for either species of slander, it is very hard to suppose that the legislature used the word in question in its restricted technical sense, and designed, by the new provision under consideration, merely to confer upon parties a right which it was the well known uniform course of the courts to accord, in the absence of legislation. It is to be observed, too, that in the clause of the section allowing the defendant to give in evidence, in mitigation of damages, that he made and offered an apology to the plaintiff for the defamation, &c., the term in question is used in the identical sense in which it is employed in the clause allowing .the defendant to justify, &e.; and that there is no conceivable reason why the legislature, in allowing proof of an apology, should restrict the privilege to proceedings for words defamatory at the common law; such proof being quite as appropriate to •suits for insult. When, in addition to these considerations, it is further observed that the -legislature, whilst re-enacting, in the seeond section of the 148th chapter, the law making actionable all words which, from their usual construction, &e., are considered as insults, have left out of the second clause of the section so much of the former law as declared that no plea or exception should preclude the jury from passing on the words, and have restricted the inhibition to tbe sustaining of a demurrer only, it is, I think, impossible to .avoid the conclusion tliat tbe legislature designed, by the new provision on the subject, to extent to defendants in suits for insulting words, the right to plead and prove the truth of the words. Whether the extension of this privilege is to be construed by the eourts as free from all exception or qualification, is a question about which I deem it unnecessary to express any opinion. Irn Brooks v. Calloway, judge Allen, in the eourse of his opinion, supposed many instances of insults—“.allusions to personal *88 defects, family misfortunes, and the like,”-—in which " ’ the words would be the more insulting because of their truth; and if in such eases the plea of justification were a^owe<i) “ the law, (as he said) which proffered redress for insult, would furnish the opportunity of aggravating the outrage, and be itself an insulting mockery.” In Mosely v. Moss; also, judge Baldwin, after reasoning to show that the truth of the insulting words in actions founded upon the statute, should be admitted in mitigation of damages, as a general rule, remarked that such a rule was not free from exception. “ On the contrary, (he observed) cases may doubtless occur in which, from their very nature, the truth of the words would he irrelevant, impertinent, and scandalous.” After citing cer-_ tain instances of the kind, he concluded' that “ it was competent for the courts to exclude evidence wholly irrelevant to the merits of the controversy, ‘especially when absurd or indecent in its character, or wantonly offensive to the feelings and reputations of third persons.” In this connection it is proper to add, that the rale which,, at the common law, allows the truth of the words to he pleaded in actions .for defamation, considers the plaintiff as having excluded himself from the protection of the law by bis own misconduct. The reason assigned by Mr. Starkie for allowing the plea of justification is, that “ when a plaintiff is really guilty of the offence imputed, he does not offer himself to the court as a blameless party, seeking a remedy for a--malicious mischief; liis original misbehavior taints the whole transaction with which it is connected, and precludes Mm from recovering that compensation to wliich an. innocent person would be entitled.”
In cases of the kind just alluded to, it Is-obvious, there is an entire absence of all the reasons on whieh the right on the part of the defendant to plead and prove- the truth of the words can be supposed to be founded. The *89 words, however insulting, or however well calculated to ' ’ . injure the feelings of the parties aggrieved, impute no fault or misconduct to him; proof of the truth of the words would not, therefore, even tend to show that there was anything in his conduct or character worthy of blame or reproach, and the only tendency of the proof, as was said by judge. Baldwin, in Mosely v. Moss, “ would be to gratify the malice of the defendant.”
There is, as I conceive, therefore some room for the argument, that, broad as are the terms in which the right to justify in actions for defamation is given, the statute is still to be construed in reference to that generalf; power and discretion in the courts, adverted to by judge -Baldwin, as before mentioned, so to control the pleadings before them as to prevent their being used as mere vehicles of scandal. "Whilst, therefore, conceding to the defendant in error that the Code does according to its fair construction, allow of the plea of justification in actions for insulting words, I do not wish to be understood as thereby expressing the opinion that the privilege is wholly free from exception.
As already stated however, the counsel for the defendant in error is, I think, correct in assuming that, as the law now is, the defendant may (as a general rule) plead and prove the truth of the words in all actions for words, whether slanderous at common law or made actionable by our statute. But I cannot think that the argument which he seeks to found on such assumption is sound.— The effect of the new provision on. the subject is to destroy the force of some of the reasoning on which the rule in Mosely v. Moss was rested, but not of all. The decision in that case was based not merely on the difference in the character of the pleas appropriate to the common law, and the statutory proceeding, but also, on well settled general"principles of pleading; and there still exist, as I conceive, substantial reasons for keeping up *90 the distinction established in that case, between the several modes of declaring for slander and for insulting words. It may be still a matter of very grave importance to the defendant be distinctly apprised of the precise nature of the accusation against him. Though entitled to a plea of justification in either case, it by no means follows that a defendant would make the same defence to words proceeded for as insulting merely, which he would make to the same words construed and treated by the plaintiff as slanderous. On the contrary thp extent to which the defendant’s own character may be involved in the controversy, and the mode and measure of the resistance to the action which he may consequently feel it incumbent upon him to make, may'depend on the construction placed by the plaintiff in his declaration on the words complained of. Of this the case in hand itself furnishes one of the best illustrations. Whether the words, for the speaking of which the action is brought, do or do not import a charge of perjury depends on whether they were spoken in connection with and in reference to certain extrinsic facts and circumstances,'or not. Hot-withstanding a plea of justification is now allowable in either aspect of the case,-the character and the quantum of evidence to, sustain this plea would 'be very different in the former view of the case from what they would be in the latter. It seems to be well settled, that when the defendant justifies to. a charge of perjury he must prove all the particulars which constitute the crime of perjury; viz: the deliberate deposition, the lawfully administered oath, the judicial proceedings,'the absoluteness of the matter testified to, its materiality to the point in question direct or collateral, and its falsity. Hopkins v. Smith, 3 Barb. S. C. R. 602; Clark v. Dibble, 16 Wend. R. 601. And the falsity of the words must be proved either by two witnesses or by one witness and strong circumstances conducing to that end. The oath of the *91 accused, who is presumed innocent until proved guilty, is held to stand as the oath of a disinterested witness.— A single witness poises the scale of evidence; and some evidence, material, independent and corroborative of the testimony of the accusing witness, either positive or circumstantial, is required to turn the scales and prove the charge. Same cases; and Steimnan v. McWilliams, 6 Barr’s R. 171; Woodlick v. Keller, 6 Cowen’s R. 118.
On the contrary, if the declaration be treated as imputing to the defendant merely that he had charged the plaintiff with having sworn to a lie, not on oath in a judicial proceeding, the testimony required to support a plea of justification would depend on the general rules of pleading and evidence.
It seems to me obvious, therefore, that if when the declaration has nothing on its face to show that the plaintiff treats the words as insulting and actionable under the statute, the defendant is not to be allowed to test by a demurrer whether the declaration is good as for a defamation at common law, he may, in many cases, labor under embarrassments and difficulties, in determining on his defence, to which it is not just and fair, that the plaintiff should be allowed to subject him. In actions, whether criminal or civil, our laws of pleading generally recognize and proceed upon the propriety of notifying' the defendant fully of the precise nature of the offence or grievance for which he is held to answer. In actions of the kind under consideration wdiere the estate and character of the defendant are both involved in the controversy, it seems to me eminently proper that he should have such notice. The language used by the legislature in respect to the demurrer in the 2d section of eh. 148, Code, is still the same that it was in the former law; and in Mosely v. Moss this court decided that the inhibition, in respect to allowing the demurrer, was restricted to cases where the suit was for words, made *92 actionable by the statute. If the legislature had de- ° signed in 1849 to take away from the defendant the Tight to demur to a declaration counting as for a comm011 ^aw defamation, it is difficult to suppose that they would not have done so by 'the simple declaration, that in no action for defamation shall a demurrer preclude a jury from passing on the case. They would hardly have resorted, instead, to the awkward stratagem of an implied repeal of the right to demur in one class of cases, to be deduced from a clause giving the defendant a right to justify in the other.
I think that the rules in respect to the declaration stand, in the particular under consideration, as they did before the Code; that when the plaintiff proceeds under the statute, he must in his declaration aver that the words from their usual construction and common acceptation are construed as insults, and tend to violence and breach of the peace; or else employ some other equivalent averment to denote that the. words are actionable under the statute; that when there is no averment of the kind in a declaration, it may be demurred to as defective, unless it sets out properly, and in substantial compliance with the rules of pleading, such a charge as constitutes defamation at the common law; and that it is not competent for a plaintiff to blend' the common law and statutory causes of action in one count.
Tested by these rules each count is clearly insufficient. They have been shown to be defective as counts for -slander at common law. ■ They are equally so as counts for insulting words. The first count uses no expression whatever, to show that the plaintiff is relying on the statute. In the second count it is true the words are alleged to be false, slanderous, malicious, defamatory and insulting, but they are followed by the innuendo, that the defendant meant by the words, that the plaintiff was guilty of perjury. This count is plainly in violation of *93 the third rule just announced. On the other questions presented by the petition I deem it unnecessary to express an opinion, as they may not again arise in the court below.
I am of the opinion that the Circuit court erred; that instead of affirming it ought to have reversed the judgment of the County court with costs, and to have set aside the verdict of the jury, and to have rendered a judgment for the plaintiff in error, unless the defendant in error on leave obtained from that court, had amended his declaration. It is therefore considered that the judgment be reversed, &c., with costs, and the cause remanded for further proceedings in accordance with the principles herein declared. .
The other judges concurred in the opinion of Daniel J.
Judgment Reversed.